## PRENTISS v. KINGSLEY.

A certificate of discharge in bankruptcy is no defence to an action for rent accruing under a demise for years, after a decree of bankruptcy, and before discharge.

In error from the Common Pleas of Philadelphia.

*March* 8. Case stated. The plaintiff, on the 28th February, 1842, demised a house to defendant, for one year from the 1st of May ensuing, at a yearly rent of $300, payable quarterly. On the 2d November, 1842, the tenant filed his petition in bankruptcy, and was decreed a bankrupt on the 30th December of the same year. In June, 1845, he was discharged as a bankrupt, and obtained his certificate. This action was brought for the last quarter's rent, which accrued on 1st May, 1843.

Judgment below was given for plaintiff.

*Waln*, for plaintiff in error.—If the rent was a claim proveable under the petition, it was discharged by the act. The fifth section allows claimants on debts not then due to prove. The rent here was due on the contract when made, though not payable until the

end of the last quarter. It is like the case of an annuity which is discharged: 8 W. & S. 183.

*Thayer,* contrà.—Debts accruing after petition and before· discharge are not proveable, and therefore not barred (1 Sm. Lead. Ca. 454, 5 Law Rep. 392, 3 Pa. L. J. 393), unless they are within the exception of the statute. But rents are not included in the exception, as was decided in 8 W. & S. 183.

*March* 12. BELL, J.—The rent sought to be recovered in this action was, by the terms of the demise, payable on the 1st of May, 1843. The lessee, the now plaintiff in error, was decreed a bankrupt on the 30th of December, 1842.

Was the demand now made proveable under the bankrupt act of 1841? All claims and demands, existing at the date of the decree of bankruptcy, were so proveable; and, by the proviso of the fifth section, it was enacted that "All creditors, whose debts are not due and payable until a future day; all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurance, sureties, endorsers, bail, or other persons having uncertain or contingent demands against such bankrupt, shall be permitted to come in and prove such debts," &c. Under this provision, a present debt or duty, though not payable until after the bankruptcy, might be proved. But it was clearly otherwise, where the debt did not actually exist at the time of the decree, though before that there was a covenant or agreement, from which a claim might thereafter arise, or a debt spring into existence. Thus, a covenant to pay money on demand was held to be proveable, if demand was made before bankruptcy, but otherwise, not; for, before demand, there was no duty incumbent on the covenantor: *Ex parte* Campbell, 16 Ves. 248. So, too, it was determined that a bond to replace stock by a given time, might be proved, if the breach of it occurred prior to the bankruptcy; but not where the time stipulated for replacing the stock did not arrive until afterwards: *Ex parte* King, 8 Ves. 334. Upon the same principle, before the statute 49 Geo. 3, c. 121, which gave the annuitant a remedy, from thence adopted by the American act, an annuity was not proveable, when not secured by a forfeited annuity bond, which, says C. J. Gibson, "enabled the courts to let the annuitant in to prove as a creditor for the penalty, taken by a legal subtlety, to be the debt at law." The rule is the same, where the consideration of an agreement is prospective, and does not, in fact, arise

until subsequently to the decree.    As if one promise to pay a sum of money, as a compensation for building a house, when finished. Until the house be completed there is no obligation to pay, and consequently no existing demand proveable under the commission. Precisely analogous to this, in principle, is the case of an accruing rent service.    In West *v.* Sink, 2 Y. 274, this court decided that a growing rent was *debitum in præsenti*, though *solvendum in futuro*, within the meaning of the act of 21st March, 1772, which, of the avails of goods taken in execution upon demised premises, gives to the landlord any sum of money *due* for rent, not exceeding one year.    The landlord was accordingly permitted to claim a proportional part of a year's rent, computed up to the time of the levy, though the year had not then expired.    But the principle of this decision was very soon afterwards impeached.    In the very next case, of Binns *v.* Hudson, 5 Bin. 505, C. J. Tilghman said : "Were the construction of the act to be given now, for the first time, I should incline to the opinion, that the landlord could claim no rent which was not *actually due* at the time of the levy." In Lichtenthaler *v.* Thompson, 13 S. & R. 158, decided in 1825, the present Chief Justice, in allusion to West *v.* Sink, observed, "By the custom of this state, the landlord, for the current year, was entitled to demand the rent up to the time of the levy, although by the terms of the lease no rent was due.    It is too late to inquire, how a custom so contrary to the evident intention of the act, obtained the force of law."    And, finally, in The Bank *v.* Wise, 3 W. 394, the late Mr. Justice Kennedy proved the decision of West *v.* Sink to be founded in entire misapprehension. He clearly shows, both from reason and by authority, that rent being payable out of the profits of the land, and the consideration for its payment being the enjoyment of the thing demised, it must first be complete, before any obligation to pay the rent can arise ; that, unlike the case of a bond given on a past consideration, for the payment of money at a future day, or a parol promise of like nature, in legal parlance rent is never considered to be due or existing, as a tangible interest, until it has become actually payable.    He notices Clun's case, 10 Co. 128, where it is laid down that "rent, reserved, is to be paid out of the profits of the land, and is not due until the profits be taken by the lessee."    For this reason, it was there held, "that, if the land is evicted, or if the lease be determined before the legal time of payment, no rent shall be paid; for there shall never be an apportionment in respect of *part of the time*, as there shall be on an eviction of part of the

land." He also cites the authorities, which show that, so little does rent, not payable, partake of the character of a present debt or duty, a release of all demands (the largest word that can be employed for this purpose) from the lessor to the lessee, will not discharge it, because, says Littleton, it was neither *debitum* nor *solvendum*, at the time of the release made; and he concludes by observing, that "Under this view of the nature of rent, which, by the terms of the lease, has not become payable, it is evident the court, in West *v.* Sink, mistook the meaning and import of the term 'due' when applied to it, because from the foregoing authorities it appears, that rent, in legal parlance, is never considered to be *due* until it has become actually payable. In fine, that the words 'due' and 'payable,' when applied to rent, are convertible terms." This course of reasoning—the correctness of which is recognised so lately as Greider's App. 5 Barr, 426—would seem to be conclusive of the question raised upon this record. But perhaps an apology is due for repeating it, since the very point is decided in Bosler *v.* Kuhn, 8 W. & S. 183, where it was held, that a landlord cannot prove, under a commission in bankruptcy, for the coming rent, as the holder of a debt payable *in futuro.* "A rent service," it was said, "is not a debt; and a covenant to pay it is not a covenant to pay a debt; it is a security for the performance of a collateral act. The annual payments spring into existence, and for the first time become debts, when they are demandable; for, while they are growing due, the landlord had no property in anything distinct from the corpus of the rent, or the realty of which they are the produce; and the fruit must be severed from the tree which bears it, before it can become personal property and a *chose in action.*" In that case, to be sure, the rent was perpetual, reserved upon a fee-simple conveyance of the land out of which it issued; but, though this furnished an argument against the attempt to treat it as an annuity, capable of being valued under the bankrupt act, it did not furnish the ground of the decision. The basis of the determination was, that the rent reserved was an ordinary rent service, as ascertained by Ingersoll *v.* Sergeant, 1 Wh. 337; and, therefore, not within the purview of the statute.

The ruling of the court below is, consequently, right.

Judgment affirmed.