## Zug et al. v. Watson et al.

*A. J. W. Hutton* and *John A. Smarsh,* for exceptant.

*Isaac I. Wingert* and *Edwin D. Strite,* contra.

DAVISON, P. J., May 27, 1933.—These three executions having been issued on June 5 and 6, 1930, and personal property of the defendants levied on by virtue thereof by the Sheriff of Franklin County, one Catharine Bowers filed her notice with the sheriff claiming as landlord the sum of $341.67 as unpaid rent due before June 5, 1930. The personal property so levied upon by said sheriff was sold by him in August and November 1930, for a total of $915.45. Deducting costs to the amount of $148.63 left a balance of $766.82 for distribution, this sum remaining in the hands of the then Sheriff of Franklin County.

Upon petition William S. Hoerner, Esq., was appointed auditor to make proper distribution of that fund.

The auditor found as facts that said Catharine Bowers was the owner of a farm in Guilford Township, Franklin County, which she leased by parol to William M. Watson from April 1, 1929, to April 1, 1930, which lease was continued for the next year; and that by the terms of the lease the landlord was to furnish the farm and one half the fertilizer and seed, one third of the road tax and all other taxes, and was to receive one half of all wheat, rye, oats, and corn produced and one half all hay sold off the farm. The tenant was to furnish one half the fertilizer and seed and to pay two thirds of the road tax, and was to receive one half of all the wheat, rye, oats, and corn produced, all the hay, if needed by him, or one half the hay in case it was sold.

The auditor also found as follows in his sixth finding of fact:

In the year 1929 the defendant, William M. Watson, converted. to his own use 196 bushels of wheat belonging to the claimant, worth $1.07 per bushel, amounting to $209.72; also of the same year 163 bushels of corn, worth $1.15 per bushel, amounting to $187.45. In the year 1930 the tenant, Watson, sold off the farm four loads of hay, worth $60, of which the landlord's share would be $30, which the tenant did not pay to her. In both 1929 and 1930, the tenant failed to pay two thirds of the road tax, amounting each year to $51.11, or for both years $102.22, which the landlord was compelled to, and did, pay. This calculation makes William M. Watson indebted to the claimant in the total sum of $529.39, of which she kept a book account against the defendant. There is no explanation, satisfactory in its nature, of the difference between the amount of the claim submitted to the sheriff, $341.67, and the amount of the indebtedness of the defendant to the claimant as proven before the auditor, $529.39.

The auditor awarded the whole of said fund to said judgment creditors and refused to award any part of the same to Mrs. Bowers, holding as to her claim in his fifth conclusion of law as follows:

The claim of Catharine Bowers for a preference out of this fund because of rent due her for the year 1929 from the defendant, William M. Watson, cannot' be allowed; the rent provided for by the lease with Watson was payable in kind, whereas, the rent for which a preference as against execution upon the chattels of the tenant is allowed by section 83 of the Act of June 16, 1836, 68 PS § 321, is "money" due for rent.

While decided prior to the passage of the Act of 1836, the case of Binns v. Hudson, 5 Binney 505, throws light on the controversy as to the demand for taxes agreed to be paid by the tenant.

Exceptions were filed to this report on behalf of Mrs. Bowers. These exceptions raise but one question for us to decide, that is, was this landlord entitled to the payment of the amount claimed by her as a preference out of the fund raised by the sale of the personal property of the defendant under said executions. It is not denied that all the property sold under said executions was on the said farm of Mrs. Bowers at the time of levy and sale, but the auditor holds that under the provisions of section 83 of the Act of June 16, 1836, P. L. 755, said preference does not exist because the rent in this case was payable in kind, and this preference only arises when it is money due for rent. Section 83 reads as follows: "The goods and chattels being in or upon any messuage, lands or tenements, which are or shall be demised for life or years, or otherwise taken by virtue of an execution, and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution: *Provided,* That such rent shall not exceed one years rent."

That the personal property of the tenant on the lands of the landlord under a lease such as this is liable to distress for rent cannot be successfully denied. It has been so frequently so held in Pennsylvania that no citation of authorities is necessary to sustain it. In McClarigan v. Matlack, 98 Pa. Superior Ct. 483, 484, the court said: "A tenant on the shares is wholly different. He is in possession of the land, and the landlord may distrain for his rent." But, conceding the right of the landlord to distrain for rent under these circumstances, does this give her a right to her preference to the fund, or a part of it, when the rent is payable in kind and not in money? This is the whole question before us. The learned auditor has not given us the benefit of an argument in support of his position in the matter, but states that position clearly in his said fifth conclusion of law, that is, that this claim cannot be allowed a preference because the said act says money due for rent, and here the rent was payable

in a share of the crop. We feel that the intent of this act and how it must be construed must be reached by considering its purpose and how that purpose should be carried out and what effect that purpose had on the words actually used.

We have searched diligently, as we know counsel on both sides have, for some construction of this act referring to this particular question, but have been unable to find any and therefore must treat it as a question of first impression.

The auditor based his conclusion on the fact that this preference is allowed only where a sum of money is due for rent. The question is not without difficulties, but we are inclined to a broader interpretation of the act than that taken by the auditor.

At common law, when an execution was levied on a tenant's goods, the landlord lost his rent and could not distrain, the goods then being in custodia legis. The Acts of 1772 and 1836 were passed to give the landlord a remedy when the goods had been levied upon, not to distrain, but to have a preference out of the fund derived from the sale of those goods on which he might have distrained.

It has been held in a number of cases that the landlord's right to a preference under the Act of 1836 is dependent on his right to distrain on the goods sold. As stated by Judge Endlich in Deisher v. Amusement Co., 7 Berks 197, 198: "The right to payment of the landlord's demand out of the proceeds of an execution against his tenant at the suit of a judgment creditor is given by Act 16 June 1836, sec. 83 and 84, P. L. 755, where the goods seized and sold were 'liable to distress' by the landlord. Hence it is laid down that 'the landlord's right to be paid out of the proceeds of sale depends on his power to distrain on the goods sold:' Moss's App., 35 Pa. 162; Lewis's App., 66 id. 312". In Moss's Appeal, supra, the court said (p. 165): "No attentive reader of the Act of 1836 can doubt, that the legislature meant to substitute the landlord's claim on the proceeds of the execution sale for his right of distress. Where one existed the other was intended to be conferred. The substitution was limited to a year's rent, but to that extent the substitution was complete." See also Liquid Carbonic Company v. Truby, 40 Pa. Superior Ct. 634.

It is urged on us, however, by counsel for the judgment creditors that even if this right to distrain does exist, and though the rule as to the landlord's right to the fund depends on his right to distrain, these are not controlling in the instant case, as they apply only where a sum of money is due for rent and not where the rent due is a share of the crop as in this case. We do not believe that this is the correct interpretation of that act. It is true that it says that the goods and chattels shall be liable for the payment of any sums of money due for rent, but, as we view it, the act did not intend to make two classes of landlords, one of whom was entitled to this preference because the rent was payable in money and one not entitled to it because it was payable in kind, that is, in crops raised on the farm. Our thought is that this right to a preference was intended to substitute this right to the proceeds of the sale for his right to distrain, whether his rent accrued to him in money or other thing of value. We realize that the act speaks of any sums of money due for rent, but we do not construe that as strictly as does the auditor. To us it means the payment of any rent due, the amount of which can be ascertained in money value as of the time of the taking of the goods in execution, as this is substituted for the landlord's right to distrain. The language of the act is ambiguous, as it well might have said "liable for the payment of rent due" and then no question could have arisen, but we take it that what was intended was to give the land-

lord something to repay him for the right of distraint which he had lost by reason of the execution, and that we must look at that intention in interpreting the act rather than the actual words used, and so construe those words as to carry out the intent of the act, if we can do so without violence to the words of the act. We think we can well do that, and hence we will sustain the exceptions insofar as they apply to the award of the fund to George S. Zug and Enos H. Horst.

The only question then is to what is the claimant, Mrs. Bowers, entitled as rent under the circumstances as shown by the evidence. Is she entitled alone to the value of the wheat, hay, and corn, as set forth in the sixth finding of fact, or is she also entitled to the taxes claimed for? On the argument, counsel for Mrs. Bowers conceded that she was not entitled to 2 years taxes, but claimed for one year $51.11. Is she entitled to this? We find she is not. It has been held in some cases that taxes can be distrained for as part of the rent, but that is so only when the agreement of the parties has made it rent distrainable by distress. This is so held in Binns v. Hudson, 5 Binney 505, and the reason for the rule and its application is fully discussed in Deisher v. Amusement Co., supra. The evidence before us is not such as to make the taxes a part of the rent which would support a distraint, and therefore we cannot allow them a preference out of the present fund. The items for which preference is allowable and the amount of the same, as appearing in the sixth finding of fact, are wheat, $209.72, corn, $187,45, and hay, $30, or a total of $427.17.

We will therefore refer the report back to the auditor to make distribution in accordance with this opinion.

Now, May 27, 1933, the exceptions to said auditor's report are sustained insofar as they apply to refusing the claim of Catharine Bowers and awarding the fund to George S. Zug and Enos H. Horst, and the report of the auditor is referred back to him to make distribution in accordance with this opinion.